[Civ. No. 7188. Second Appellate District, Division One.—April 30, 1931.]

FRANCIS WHITAKER et al., Respondents, v. KENNETH A. BRAINARD et al., Appellants.

Harry A. Chamberlain for Appellants.

Roger Marchetti and Clarence Meily for Respondents.

CONREY, P. J.—The plaintiffs employed the defendant Kenneth A. Brainard to sell for them a lot in the city of Beverly Hills, which we will identify as "lot 69", at the price of $60,000. Brainard pretended to find one M. A. Forsythe as purchaser, but in fact was himself the purchaser. Forsythe was Brainard's uncle and acted as dummy in the transaction. An agreement was made for the sale of the property to Forsythe at said price. The sum of $2,000 was paid on signing of the agreement, which provided that if the purchaser failed to complete the purchase the amounts paid thereon should be retained as liquidated and agreed damages. It was further agreed that the seller should pay to the agent Brainard as commission the

sum of $3,000. The terms of sale were $25,000 cash, including the $2,000 deposit; balance on first mortgage. Purchaser was to have clear title. The transaction was conducted through the usual process of escrow, the escrow agent being the Security Trust & Savings Bank (Beverly Hills Branch). While the transaction was in escrow, Forsythe and wife notified the bank that they had assigned their interest in the property to the defendants Brainard, saying, "we therefore nominate the title in the above described property to be vested in them as joint tenants". Accordingly a deed of conveyance was prepared, naming defendants as grantees, and in that form the deed was executed by the plaintiffs. Mr. Brainard, by supplemental escrow instructions in his own name directed the bank to "place to the credit of the buyer in this escrow the commission coming to me". He also deposited with the bank in cash the sum of $20,000 and executed in due form a $35,000 mortgage to the plaintiffs on said lot 69. The bank, out of said funds and in accordance with an instruction given by the plaintiffs, paid off an existing trust deed obligation of $11,500 plus certain accrued interest. The cash remaining after satisfaction of the incidental charges amounted to a little over $8,000 which was paid to the plaintiffs by the bank in closing the transaction. A short time thereafter plaintiffs served on the defendants a written notice of rescission of the transaction. By said notice plaintiffs tendered back and offered to restore to the defendants all sums of money received by said plaintiffs, together with the mortgage and everything and anything received by said plaintiffs from the said defendants in said transaction. No question is presented affecting the sufficiency in form of said notice or the fact that the attempted rescission was based upon the claim of the sellers that the defendant Kenneth A. Brainard, while acting as agent for the plaintiff, had wrongfully purchased the property for himself, and upon the further claim that the plaintiffs had made their conveyance of said lot 69 without knowledge that the agent was the real purchaser, and in the belief that said agent was acting in good faith as the agent of the plaintiffs in the sale of said real property. Promptly after said notice of rescission, the plaintiffs commenced this action to obtain reconveyance of said lot 69 and for other stated

relief. Upon issues duly raised by answer the case was tried, and judgment entered in favor of the plaintiffs. From this judgment the defendants Brainard appeal.

The judgment provides that the plaintiffs recover from the defendants the sum of $3,000; that the transaction whereby said lot 69 was conveyed be rescinded and set aside; that the defendants reconvey said lot to the plaintiffs; that the $35,000 note, given with the mortgage executed by the defendants to the plaintiffs, be delivered into court for cancellation when and after said real property has been conveyed to the plaintiffs; that the written escrow instructions or agreements concerning the transfer of the property be canceled and rescinded; that the plaintiffs recover costs.

■ Appellants contend that the court erred in determining that the plaintiffs were entitled to rescission. They admit the general rule, which prohibits an agent from purchasing the property of the principal without the knowledge and consent of the principal. But they rely upon an exception stated in *Burke* v. *Bours*, 98 Cal. 171 [32 Pac. 980, 981], to the effect that there is no inhibition upon a purchase by an agent from his principal, where the facts are fully disclosed, and the agent acts in good faith, taking no advantage of his situation, and that the principal may, if he sees fit, deal with the agent as with any other person. In that case the court further said, "When, however, the agent deals with his principal 'at arm's-length, and after a full disclosure of all that he knows with respect to the property' (*Murphy* v. *O'Shea*, 2 Jones & L. 425), or when the principal ratifies the purchase from himself with full knowledge of the circumstances connected with the transaction, he can thereafter avoid the sale only upon the same grounds as if the purchase had been made by a stranger." Appellant further insists that the court was not justified in holding from the evidence that the defendant Brainard concealed the fact that he was the real purchaser, up to the time of closing the deal and the recording of the deed. In the case at bar the evidence shows that Brainard never, at any time, brought to the attention of the plaintiffs the fact that he was the actual purchaser of the property of the plaintiffs. The sole and only fact which might be claimed as modifying this general statement is that the

deed, as prepared for execution, contained the names of the defendants as grantees therein. Brainard testified to a telephone conversation with Mrs. Whitaker in which she made statements showing that she had learned that he was buying the property. But Mrs. Whitaker testified that no such conversation occurred. It appears to be true that at the time when the plaintiffs executed the deed in the bank (Brainard not being then present) they saw the name of Brainard in the deed. Mrs. Whitaker says: "Q. Mrs. Whitaker, how did you know that Brainard's name was in the deed? A. I noticed it on the deed. I took it for granted it was as an agent. They usually have their names on the papers . . . I did not read it carefully." This evidence, taken with all the other evidence on the subject, falls far short of proof that the plaintiffs, after a full disclosure of the facts and with full knowledge of the circumstances connected with the transaction, consented to sell their property to their agent. We are satisfied that the plaintiffs were entitled to rescind.

Appellants next contend that the court erred in ordering rescission and cancellation without restoring to the defendants the purchase money they paid the plaintiffs. Respondents admit that the $3,000 commission was not paid, and that the provision in the decree for the cash recovery of that sum should be stricken from the decree. ■ With respect to the $2,000 paid at the beginning of the transaction, respondents rely upon the agreement which stated that, if the purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, the amounts paid hereon shall be retained as liquidated and agreed damages. But respondents have not the right to rely upon the agreement and at the same time enforce a rescission thereof. ■ With respect to the remaining $20,000, and in explanation of the fact that the court made no finding in regard to the expenditure of that sum and no provision for its return to the defendants, respondents in their brief say: "The reason the court made no finding, and the reason appellants are not now entitled to reimbursement for this amount, is that there is not anywhere in the record any competent evidence as to what the bank did with the money." In making this contention it seems to us that respondents are not showing a disposition to allow

to the defendants that equitable consideration which they are demanding for themselves. When the transaction went into escrow there was outstanding against the property a trust deed obligation, to which we have referred, of $11,500 in favor of Walter G. McCarty corporation, which had to be released before the sale transaction could be completed. The plaintiffs were to furnish a certificate of clear title. Mr. Whitaker was asked if he had notified McCarty "about their mortgage"? He replied "I may have told them to take it up with the escrow department. Q. Who did you take it up with at the bank? A. It was up to them to take it up. The escrow instructions covered it. They were to pay off the balance due on the mortgage." The evidence clearly enough establishes the fact that by satisfaction of the McCarty obligation, together with cash received by the plaintiffs and incidental items chargeable to the plaintiffs, they received the full sum of $20,000 in addition to the said initial sum of $2,000. This was admitted by plaintiffs' attorney at the very beginning of the trial. It is repugnant to equity that under the facts of this case plaintiffs should be allowed to recover the real property conveyed by them, and at the same time retain the said sum of $22,000 received by them.

The judgment is reversed, and the cause is remanded to the trial court with instructions to make an additional finding showing payment to the plaintiffs of said sum of $20,000 as well as said original deposit of $2,000; and with further instructions to enter an amended decree which will omit said recovery of $3,000 against the defendants, and also in appropriate terms will make the rescission and cancellation of the transaction in question conditional upon return by the plaintiffs to the defendants, within a reasonable time to be fixed by the court, of said sum of $22,000, and will provide that unless such repayment be made, within the time allowed therefor, the conveyance made by the plaintiffs to the defendants shall be confirmed.

Houser, J., and York, J., concurred.